**In re APEX OIL COMPANY,
et al., Debtors.**

**APEX OIL COMPANY, et al., Debtors,**

**v.**

**LPOM GROUP, Claimant.**

**Bankruptcy No. 87–43804–BKC–399.
Claim No. 2233.
Objection No. 8842.**

United States Bankruptcy Court,
E.D. Missouri.

May 29, 1992.

Steven B. Haffner, Steven B. Haffner & Assoc., Farmington Hills, Mich., for LPOM creditor.

James V. O'Brien, Billy R. Randles, Lewis, Rice & Fingerish, St. Louis, Mo., for debtors.

Steven N. Cousins, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, Mo., for Creditor's Committee.

Neil H. Miller, Deborah A. Weedman, Clayton, Mo.

James S. Kinder, Asst. U.S. Trustee U.S. Dept. of Justice, St. Louis, Mo.

## ORDER AND MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

The Court has jurisdiction over this claims objection proceeding pursuant to 28 U.S.C. § 1334(b), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2)(B). LPOM Group seeks $69,070.73 for contribution from Apex Oil Company under state environmental laws and common law for clean-up costs incurred in removing hazardous materials released by debtor prior to LPOM's purchase of the property. Apex Oil moved for summary judgment on its objection to the claim. For the following

reasons, the objection is sustained and LPOM's claim is disallowed.

## FACTS

Clark Oil Company leased premises in Michigan and operated a gasoline service station thereon from 1959 to October 14, 1986. Debtor Apex Oil is the successor in interest to Clark as a result of a merger. During debtor's occupation of the premises, petroleum and its chemical by-products, benzene, toluene, ethyl benzene, and xylene, were released into the soil.

In 1986, LPOM purchased the real property subject to Clark's Lease. The Lease required Clark to "comply with all laws, ordinances, regulations, rules, and directions" of all governmental agencies during its tenancy. The Lease also provided that:

Lessee shall protect, indemnify and save the lessor harmless form and against any and all liability and expense of any nature ... in any manner growing out of or connected with the lessee's use or occupancy of the premises or conditions thereof, or of the adjoining sidewalks, streets of way, during the term of this lease.

Both parties were interested in terminating the existing lease, so shortly after the purchase, LPOM and Clark entered into a Lease Termination Agreement. LPOM sought the Termination Agreement because it had acquired the property with the intention of building a quick-change oil facility, and Clark was no longer interested in continuing operations on the premises. Clark paid $7,838.57 to buy its way out of the Lease, which would have run until 1990. The Termination Agreement provided:

Lessor hereby releases CLARK from all the covenants and obligations contained in the Lease, as amended, and CLARK does hereby release and surrender all of its rights, title and interest in and to the Lease, and Lessor does hereby accept said release and surrender and Lessor hereby consents and agrees to the cancellation of the lease, all effective as of October 14, 1986.

In 1988, during construction of the oil-change facility, LPOM discovered the property was contaminated with petroleum and its by-products. The Michigan Department of Resources ordered LPOM to take remedial action to clean up the site. Clark did not respond to a request by LPOM to remove the hazardous substances from the property. Debtor does not contest that during the time Clark occupied the premises, there hazardous substances were released on the property. LPOM spent $69,070.73 to clean up the property and has filed a claim against debtor for the cleanup cost.

The court granted LPOM's motion to file a late claim. LPOM bases its claim on provisions of the Michigan Environmental Response Act, and also on common law theories of nuisance, strict liability, and restitution. See MCLA § 299.601 et seq.; the Michigan Underground Storage Tank Regulatory Act, MCLA § 299.701 et seq.; the Michigan Hazardous Waste Management Act, MCLA § 299.501 et seq.; the Michigan Environmental Protection Act, MCLA § 691.1201 et seq.; the Michigan Water Resources Commission Act, MCLA § 323.1.

Debtor moved for summary judgment. The dispositive issue is whether the Lease Termination Agreement constitutes a general release of all claims and causes of action, including environmental claims, that LPOM may have had against debtor's predecessor in interest. The court finds that LPOM released any right to seek contribution for environmental cleanup costs. Accordingly, this opinion does not address other arguments raised in the summary judgment proceeding. LPOM's Claim No. 2233 is disallowed.

## RELEASE OF RIGHT TO CONTRIBUTION

Debtor may be liable under Michigan environmental statutes for leakage of hazardous substances on the property during the term of its lease. Although LPOM correctly asserts that it may seek contribution under Michigan environmental statutes from a responsible party, its right to contri-

bution may be waived or released by contract. *Niecko v. Emro Marketing Co*, 769 F.Supp. 973 (E.D.Mich.1991). LPOM is not entitled to contribution under either its statutory or common law theories because the Termination Agreement was an effective release of debtor's environmental liability. Cases cited by LPOM at trial are not pertinent to the central issue in this case.

The terms of the Lease Termination Agreement are unambiguous. The plain language of the Lease Termination Agreement generally releases debtor from any and all obligations and liabilities growing out of or connected with the debtor's use or occupancy of the premises. Debtor no longer has a contractual or statutory duty to indemnify LPOM for environmental injuries arising from its use and occupancy of the premises.

LPOM was aware at the time it executed the release that debtor had operated a service station on the property for years. LPOM also should have been aware of its potential liability for environmental problems caused by leakage from underground gasoline storage tanks prior to the 1986 transaction. "Having once struck what now appears to be an imprudent bargain, the Plaintiffs ask the Court to interfere with their own contracting powers for no other reason than that they made a bad deal when left to their own devices in the first instance." *Niecko*, 769 F.Supp. 973, 980. Accordingly, it is hereby

ORDERED that Debtor's motion for summary judgment is granted, the objection to the LPOM Group Claim No. 2233 is sustained, and Claim No 2233 is disallowed.